IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWIN STAR VENTURES, INC., et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNIVERSAL UNDERWRITERS INSURANCE COMPANY,<br><br>    Defendant.<br>_____/ | No. 10-4284 MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT** |

    Before the Court is defendant Universal Underwriters Insurance Company's ("Universal Underwriters") Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, filed January 27, 2012. Plaintiffs Twin Star Ventures, Inc., James Earl Cameron, and Joshua Scott Cameron (collectively, "Twin Star") have filed opposition, to which defendant has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

    The following facts are undisputed.

    During the time period relevant to the instant action, Twin Star was a franchise of Midas International Corporation ("Midas") and owned several Midas shops, including a

---

[1] By order filed February 29, 2012, the Court took the matter under submission.

Midas shop in Orange, California. (See Denton Decl. ¶ 1.) Twin Star was insured by Universal Underwriters under a policy in effect from December 1, 2005 to December 1, 2006 ("Policy"). (See Lerche Decl. Ex. A.)

In 2006, Larry Jarman ("Jarman"), a former employee of Twin Star at its Midas shop in Orange, filed a state court action against Twin Star and other parties ("Underlying Action"). (See Def.'s Req. for Judicial Notice Ex. 3; Pls.' Req. for Judicial Notice Exs. A, B.) In his first amended complaint, filed April 10, 2006, Jarman alleged seventeen causes of action, asserting, under various legal theories, his entitlement to damages based on the termination of his employment, and further asserting one cause of action titled "Violation of California Penal Code Section 632," in which he alleged Twin Star improperly recorded certain of his telephone calls. (See Pls.' Req. for Judicial Notice Ex. A.) With respect to that one cause of action, Jarman alleged that on at least twelve occasions beginning in January 2006 and ending in April 2006, Twin Star "taped" phone calls he answered while at work and then allowed Midas to listen to them. (See id. Ex. A ¶ 200.) According to Jarman, the calls were recorded as part of a Midas program known as "Focus on the Caller," and he "never signed the Employee Consent form to participate in the Focus on the Caller program," thereby making the taping of his calls "unlawful." (See id. Ex. A ¶¶ 200, 203.) On May 15, 2006, Universal Underwriters declined to defend Twin Star against the Underlying Action. (See Lerche Decl. Ex. B at 1.)

On June 26, 2006, Jarman filed a third amended complaint,[2] in which he alleged fourteen causes of action pertaining to his termination, and realleged his claim for Violation of California Penal Code Section 632. (See Def.s' Req. for Judicial Notice Ex. 3; Pls.' Req. for Judicial Notice Ex. B.) On November 2006, Universal Underwriters again declined to defend Twin Star. (See Lerche Decl. Ex. B at 1.)

According to Twin Star, it settled the Underlying Action on October 30, 2009. (See

---

[2]Neither party has offered Jarman's second amended complaint nor discussed its contents.

2

Second Amended Compl., filed February 25, 2011, ¶ 13.)[3]  Twin Star thereafter filed the above-titled action.

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact.  Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  See Celotex, 477 U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Liberty Lobby, 477 U.S. at 249-50 (citations omitted).  "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion."  See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

//
//

---

[3] Neither party, in connection with the instant motion, has offered any evidence regarding the settlement.  In a prior filing, the Joint Case Management Statement filed December 30, 2010, the parties jointly stated Twin Star had disclosed to Universal Underwriters that the Underlying Action was settled for $70,000.  (See Joint Case Management Statement at 4:19, 5:1-7.)

3

**DISCUSSION**

In the operative complaint herein, the Second Amended Complaint ("SAC"), Twin Star alleges that under the terms of the Policy, Universal Underwriters was "obligated to provide [Twin Star] with a defense and indemnification in the [U]nderlying [A]ction" but "refused" to do so. (See SAC ¶¶ 20-21.) Based on said allegation, Twin Star alleges that Universal Underwriters breached the express terms of the Policy and also breached the implied covenant of good faith and fair dealing contained therein.

Under California law, "an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." See Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 19 (1995). Further, "because current [California] pleading rules liberally allow amendment," an insured "is entitled to a defense . . . if the complaint might be amended to give rise to a liability that would be covered under the policy." See Montrose Chemical Corp. v. Superior Court, 6 Cal. 4th 287, 296, 299 (1993). In short, an insurer has a duty to defend unless "the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." See Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 n.15 (1966).

The Policy provides, in relevant part, as follows: "We will pay all sums the INSURED legally must pay as DAMAGES (including punitive damages where insurable by law) because of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD." (See Lerche Decl. Ex. A at 37.) The Policy provides six definitions of "INJURY," each such definition having a "Group" number. (See id. Ex. A at 38-39.) During the course of discovery in this action, Twin Star has asserted the Underlying Action "triggered coverage under the definition of injury in Group 1, Group 2, and Group 3." (See id. Ex. C at 6.)

In the instant motion, Universal Underwriters argues no potential for coverage existed under any of those definitions of injury. Consequently, Universal Underwriters contends, it had no duty to defend the Underlying Action nor to indemnify Twin Star, and,

4

1  thus, it did not breach any express or implied provision in the Policy.

2  **A. Group 1 and Group 2**

3  The "Group 1" definition of injury is "bodily injury, sickness, disease or disability . . .
4  or damage to or loss of use of tangible property." (See id. Ex. A at 38.) The "Group 2"
5  definition of injury is "mental anguish, mental injury, fright, shock, or humiliation, except
6  when arising from DISCRIMINATION." (See id.)

7  Universal Underwriters contends no potential for coverage existed under the Group
8  1 or Group 2 definition of "injury" in light of an exclusion, which Universal Underwriters
9  refers to as the Employer's Liability Exclusion. Specifically, the Policy provides it "does not
10 apply to . . . INJURY as defined in Groups (1) and (2) to any employees of the INSURED
11 arising out of and in the course of their employment by or on behalf of the INSURED . . . for
12 which the INSURED may be held liable as an employer or in any other capacity." (See id.
13 Ex. A at 40.) In its opposition, Twin Star states it does "not dispute that the Employer's
14 Liability Exclusion precludes coverage for Claims" under "Injury Group 1 and Injury Group
15 2." (See Pls.' Opp., filed February 10, 2012, at 13:17-19, 13:26-14:2.) Twin Star has thus
16 conceded it is not entitled to coverage under the Group 1 or Group 2 definitions of injury.

17 Accordingly, to the extent Twin Star's claims are based on the Group 1 or Group 2
18 definition of injury, Universal Underwriters' motion for summary judgment will be granted.

19 **B. Group 3**

20 The Group 3 definition of "injury" is "false arrest, false imprisonment, wrongful
21 eviction, wrongful detention, malicious prosecution, abuse of process, libel, slander,
22 defamation of character, private nuisance (except pollution), invasion of the right of
23 possession of personal property[,] common law claims for invasion of the right of privacy."
24 (See Lerche Decl. Ex. A at Endorsement No. 410.) The Policy also includes the following
25 "exclusion" from coverage under Group 3: "INJURY when a claim for invasion of the right
26 of privacy is a statutory violation." (See id.)

27 //
28 //

Twin Star, citing Jarman's claim alleging invasion of privacy based on Twin Star's taping of Jarman's phone calls, argues that Universal Underwriters was required to defend the Underlying Action under the "common law claims for invasion of the right of privacy" definition of injury in Group 3.  Universal Underwriters argues it is entitled to summary judgment on all of Twin Star's claims that are based on the Group 3 definition.  Specifically, Universal Underwriters contends, no potential for coverage existed because Jarman failed to allege sufficient facts to state a claim for common law invasion of privacy, and, further, because the Underlying Action, as it pertained to an invasion of privacy, alleged a statutory violation.  As discussed below, the Court finds neither of Universal Underwriter's arguments persuasive.

First, in determining whether a potential for coverage existed, the test is not whether Jarman alleged facts sufficient to state a claim for relief under a common law theory of invasion of privacy.  Rather, the test is whether Jarman's allegations raised a "potential for coverage," see Waller, 11 Cal. 4th at 9, i.e, that a common law claim for invasion of privacy could be asserted.  See CNA Casualty v. Seaboard Surety Co., 176 Cal. App. 3d 598, 609 n.4 (1986) (holding "it is not [the] insurer's place to analyze and evaluate the underlying claim of liability in order to reject the defense of any claim that is not meritorious").  Here, Jarman's allegations raised the potential for coverage under Group 3's inclusion of "common law claims for invasion of the right of privacy," given that, under California law, the common law tort of invasion of the right to privacy "encompasses . . . unwarranted sensory intrusions such as eavesdropping [and] wiretapping."  See Shulman v. Group W Productions, 18 Cal. 4th 200, 231 (1998); see also CNA Casualty, 176 Cal. App. 3d at 608-09 and n.4 (holding, where policy provided coverage for malicious prosecution claims, insurer had duty to defend underlying antitrust action alleging insured had filed "false, frivolous and sham counterclaims" therein; rejecting insurer's argument that no duty to defend existed in light of underlying plaintiff's failure to plead essential element of claim for malicious prosecution).  In short, where, as here, a potential for coverage existed, the insurer was obligated to defend, even if it was aware of a "sure-fire" defense to the

1 underlying action, such as the "absence of an element of a properly pleaded cause of
2 action." See CNA Casualty, 176 Cal. App. 3d at 612 n.7 (internal quotation and citation
3 omitted); see also Waller, 11 Cal. 4th at 19 (holding duty to defend "applies even to claims
4 that are groundless, false, or fraudulent") (internal quotation and citation omitted).

Second, the fact that Jarman expressly sought relief for the alleged invasion of privacy under a statute, as opposed to the common law, does not defeat Twin Star's claim that it was entitled to a defense. Had the invasion of privacy claim alleged in the Underlying Action proceeded to judgment on the merits, and had Jarman, at that time, only sought relief under a statute, it would appear that Universal Underwriters would have been relieved of any duty to indemnify Jarman for a resulting judgment in his favor, in light of the exclusion of coverage for statutory claims for invasion of privacy. Nevertheless, the facts alleged in the Underlying Action created at least the potential for coverage, and the possibility existed, at least until the end of any trial, that Jarman could amend to assert a common law invasion of privacy claim. See, e.g., Glaser v. Meyers, 137 Cal. App. 3d 770, 773, 776-77 (1983) (affirming order granting plaintiff leave to amend complaint on "last day of trial" to allege new claim; holding "California courts have been extremely liberal in allowing [ ] amendments to conform to proof," even where amended complaint adds new cause of action, so long as new claim is "on the same general set of facts"). As the California Supreme Court has observed, "the insurer must defend in some lawsuits where liability ultimately fails to materialize; this is one reason why it is often said that the duty to defend is broader than the duty to indemnify." See Montrose, 6 Cal. 4th at 299; see also Waller, 11 Cal. 4th at 19 (holding duty to defend is "separate from and broader than the insurer's duty to indemnify"): Gray, 65 Cal. 2d at 272 (holding "carrier's obligation to indemnify will not be defined until the adjudication of the [underlying] action").

Accordingly, to the extent Twin Star's claims are based on the Group 3 definition of

//
//
//

7

injury, Universal Underwriters' motion for summary judgment will be denied.[4]

## CONCLUSION

For the reasons stated above, Universal Underwriters' motion is GRANTED in part and DENIED in part as follows:

1. To the extent Twin Star's claims are based on the Group 1 and Group 2 definitions of injury, Universal Underwriters' motion for summary judgment is hereby GRANTED; and

2. To the extent Twin Star's claims are based on the Group 3 definition of injury, Universal Underwriters' motion for summary judgment is hereby DENIED.

**IT IS SO ORDERED.**

Dated: March 20, 2012

MAXINE M. CHESNEY
United States District Judge

---

[4] In its motion, Universal Underwriters argues that even if it had a duty to defend, it is entitled to summary judgment on Twin Star's claim for breach of the implied covenant of good faith and fair dealing, for the reason that, according to Universal Underwriters, "there is a genuine dispute as to coverage under the Policy." (See Def.'s Mot. at 23:13.) Universal Underwriters, however, offers no evidence to support a finding that either a "reasonable factual dispute" over coverage existed, or that Twin Star's request for coverage implicated "an unsettled area of insurance law." See Feldman v. Allstate Ins. Co., 322 F.3d 660, 669 (9th Cir. 2003) (identifying circumstances under which "genuine dispute as to coverage" exists, thereby defeating "bad faith" claim by insured).