IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TWIN STAR VENTURES, INC., et al.,

    Plaintiffs,

  v.

UNIVERSAL UNDERWRITERS INSURANCE COMPANY,

    Defendant.

                                     /

No. 10-4284 MMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFERRED PORTION OF DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

      Before the Court is defendant Universal Underwriters Insurance Company's ("Universal Underwriters") motion for partial summary judgment, filed January 17, 2014. Plaintiffs Twin Star Ventures, Inc., James Earl Cameron, and Joshua Scott Cameron (collectively, "Twin Star") have filed opposition, to which defendant has replied. By order filed February 25, 2014, the Court denied the motion to the extent it sought reconsideration of whether Universal Underwriters owed Twin Star a duty to defend with respect to an action filed against Twin Star by Larry Jarman ("Jarman"), and, with respect to the remaining issues raised in the motion, afforded Universal Underwriters leave to file a supplement to its reply. Thereafter, Universal Underwriters filed a timely supplement. Having read and considered the papers filed in support of and in opposition to the deferred portion of the motion, the Court rules as follows.

**DISCUSSION**

In the deferred portion of the motion, Universal Underwriters argues it is entitled to a finding that, as a matter of law, (1) its duty to defend Twin Star in the action filed by Jarman ("Underlying Action") ceased before the Underlying Action concluded, and (2) it has no duty to reimburse Twin Star for the amount Twin Star paid to settle the Underlying Action.

**A. Cessation of Duty to Defend**

By order filed March 20, 2012, the Court found Universal Underwriters had a duty to defend Twin Star in the Underlying Action, in light of Jarman's allegations that his phone calls were taped and the policy's coverage for losses resulting from common law claims alleging invasions of privacy. The Court first considers herein Universal Underwriters' argument that its duty to defend ended before the conclusion of the Underlying Action.

The Underlying Action was resolved by settlement in October 2007. (See Leung Decl., filed January 17, 2014, Ex. F.) Universal Underwriters argues its duty to defend ceased prior to the settlement, specifically, at the time the trial court granted Twin Star's motion for summary judgment on the statutory claim for invasion of privacy as alleged by Jarman in his complaint. According to Universal Underwriters, given the trial court's reasons for its finding that Jarman could not establish a statutory claim for invasion of privacy, the trial court necessarily would have denied a motion by Jarman to amend his complaint to add a common law claim for invasion of privacy, and, consequently, the potential for coverage ceased at the time of the court's ruling on the statutory claim.

In its opposition, Twin Star argues that "to be entitled to rights limiting the scope of its duty to defend, the insurer must have defended the case immediately and entirely." (See Pls.' Opp. at 16:23-24.) The Court, as discussed below, agrees.[1]

---

[1] To the extent Twin Star alternatively argues a duty to defend existed until the case concluded because a potential for coverage existed by reason of the policy's providing coverage for losses caused by claims for "defamation of character" (see Leung Decl. Ex. A at 38), the Court is not persuaded. Although Jarman alleged that, as a result of persons' listening to his phone calls, he suffered a "loss of reputation" (see Def.'s Req. for Judicial Notice Ex. 1 ¶ 195), Jarman did not allege any facts suggesting Twin Star made a false statement about him.

2

Under California law, "[t]he defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded, or until it has been shown that there is no potential for coverage." See Montrose Chemical Corp. v. Superior Court, 6 Cal. 4th 287, 295 (1993) (emphasis in original). As the California Supreme Court has explained, once the duty to defend arises, that duty "then continues until the third party litigation ends, unless the insurer sooner proves, by facts subsequently developed, that the potential for coverage which previously appeared cannot possibly materialize, or no longer exists." See Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 657 (2005).

Here, as noted, the Underlying Action ended by way of settlement in October 2007, and Universal Underwriters did not seek to prove before such date that the potential for coverage had ended; rather, Universal Underwriters now seeks to prove, after the conclusion of the Underlying Action, that during the course of the Underlying Action, the potential for coverage ceased. Universal Underwriters argues it should be entitled to make such showing at this time because the above-quoted statement by the California Supreme Court is "dicta," given its finding therein that a duty to defend never arose. (See Def.'s Supp. Brief, filed March 5, 2014, at 16-20.) A federal district court, in applying California law, however, is "bound to follow the considered dicta as well as the holdings of the California Supreme Court." See Aceves v. Allstate Ins. Co., 68 F.3d 1160, 1164 (9th Cir. 1995) (holding district court, when applying California law, erred by failing to follow dicta contained in California Supreme Court opinion).

Further, the principle set forth in Scottsdale Ins. has repeatedly been adopted by California Courts of Appeal, as well as federal district courts applying California law. See, e.g., Hartford Accident & Indemnity Co. v. Superior Court, 23 Cal. App. 4th 1774, 1781 (1994) (holding once duty to defend arises, insurer "must defend until it obtains a declaratory judgment or summary judgment that it [no longer has duty to defend]"; rejecting argument that insurer could "unilaterally terminate a defense for which it potentially is responsible"); Fireman's Fund Ins. Co. v. Chasson, 207 Cal. App. 2d 801, 807 (1962) (holding judicial finding that duty to defend ceased during course of underlying proceeding

3

"[does] not have the effect of retroactively relieving the insurer of [its] duty to defend"; further holding insurer is relieved of duty to defend once "judgment in the declaratory relief action becomes final"); Travelers Indemnity Co. v. Insurance Co., 886 F. Supp. 1520, 1526-27 (S.D. Cal. 1995) (holding, under California law, insurer who does not initially defend may not, after conclusion of underlying action, obtain ruling that duty to defend ceased; denying as "moot" insurer's request, made after underlying case settled, for finding its duty to defend had ceased, because "all defense costs which could be incurred have already been incurred").[2] Moreover, as one California court has observed, such requirement is not unfair to the insurer because "any injustice to the insurer resulting from the time or expense of the declaratory relief action can be offset by the insurer's ability to obtain reimbursement, either from [other insurers] or from the insured." See Prichard v. Liberty Mutual Ins. Co., 84 Cal. App. 4th 890, 902-03 (2001).

Lastly, Universal Underwriters fails to cite to any case in which a court has considered the merits of an insurer's contention that a duty to defend ceased during the course of the underlying litigation, where the insurer failed to provide a defense and made such contention only after the underlying litigation had fully concluded. Cf. California Union Ins. Co. v. Club Acquarius, 113 Cal. App. 3d 243, 247 (1980) (considering merits of insurer's argument that, in light of finding by trial court hearing underlying action, duty to defend ceased prior to conclusion of underlying action, where insurer made argument in "action for declaratory relief" filed while underlying action was still proceeding).

Accordingly, Universal Underwriters has failed to show it is entitled to a finding that its duty to defend ceased prior to the conclusion of the Underlying Action.

//

---

[2] Universal Underwriters argues the above-referenced cases are distinguishable on their facts. See, e.g., Hartford Accident & Indemnity Co., 23 Cal. App. 4th at 1781 (addressing argument that duty to defend ceased because insurer "ha[d] exhausted its policy limits"); Travelers Indemnity Co., 886 F. Supp. at 1524 (addressing argument that duty to defend ceased based on evidence "extrinsic" to record of proceedings in underlying litigation). The courts' reasoning in those cases, however, is not dependent on the facts by which Universal Underwriters seeks to distinguish them.

4

**B. Duty to Indemnify Twin Star for Settlement**

As noted, Universal Underwriters also seeks a finding that it does not have a contractual duty to indemnify Twin Star for the settlement, i.e., to reimburse Twin Star for a $70,000 payment Twin Star made to settle the Underlying Action.[3]

"California law is well settled that where an insurer improperly refuses to defend an insured, the insured is entitled to make a reasonable settlement of the claim in good faith, and maintain an action against the insurer to recover the amount of the settlement." National Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 501 (9th Cir. 1997); see also Clark v. Bellefonte Ins. Co., 113 Cal. App. 3d 326, 335 (1982) (citing California cases so holding). In such a situation, "a reasonable settlement by the insured to terminate the underlying claim is presumptive evidence of the amount of the insured's liability on the underlying claim." See National Steel Corp., 121 F.3d at 501.

Universal Underwriters argues that the settlement entered between Jarman and Twin Star did not encompass a covered claim, and, consequently, it has no contractual obligation to pay any portion thereof. In support of this argument, Universal Underwriters observes that Jarman, at no time prior to the date on which the parties to the Underlying Action settled the matter, sought to amend his complaint to allege a common law claim for invasion of privacy and, further, that prior to the execution of the settlement agreement, Jarman's statutory claim for invasion of privacy had been summarily resolved against him.

As the Court previously found, Jarman's complaint, which included an allegation that some of Jarman's phone calls at the workplace were taped, raised the potential for coverage, given the policy's coverage for losses resulting from common law claims alleging invasions of privacy. See Shulman v. Group W Productions, 18 Cal. 4th 200, 231 (1998) (holding common law claim for invasion of privacy "encompasses . . . unwarranted sensory intrusions such as eavesdropping [and] wiretapping"). Jarman did not, however, allege a

---

[3]As clarified in its reply, Universal Underwriters does not seek at this time a finding that such sum is not recoverable if it is found to have acted in bad faith. Consequently, the Court does not address herein Twin Star's argument regarding damages recoverable on a claim of bad faith.

1 common law claim, but only a statutory claim for which coverage was not available in light
2 of a policy exclusion. Consequently, the potential for coverage arose from the possibility
3 that Jarman might amend the complaint to add a common law claim for invasion of privacy.
4      By order filed August 28, 2007, the trial court granted Twin Star's motion for partial
5 summary judgment, in which motion Twin Star, inter alia, argued it was entitled to summary
6 judgment on Jarman's statutory claim for invasion of privacy. (See Def.'s Req. for Judicial
7 Notice Ex. 5.) Specifically, the trial court found that the evidence offered by Twin Star,
8 undisputed by Jarman, established the "communications at issue were telephone
9 conversations in which [Jarman] was discussing his employer's business with business
10 callers while on work time," and, the trial court reasoned, Jarman "was not entitled to keep
11 his employer's business secret from his employer." (See id. Ex. 5 at 11.) In essence, the
12 trial court found that Jarman had no reasonable expectation that he could keep secret from
13 his employer telephone calls of a wholly business nature.
14      Twin Star does not argue the trial court's ruling was in error, and, indeed, would be
15 hard-pressed to do so, given it was the party who requested the trial court so rule. (See id.
16 Ex. 4 at 12-14 (Twin Star's argument to trial court that the statute on which Jarman relied
17 did "not apply to the undisputed facts of [the] case [because] the recorded telephone calls
18 were not confidential communications" and that Jarman "did not conduct himself consistent
19 with an actual expectation of privacy").) Rather, Twin Star contends, Jarman, in spite of
20 the summary judgment ruling, nonetheless could have amended to add a common law
21 claim, because a finding that a plaintiff cannot establish a statutory claim for invasion of
22 privacy does not necessarily bar such plaintiff from proceeding with a common law claim
23 for invasion of privacy. The Court is not persuaded. Although there may be some
24 distinctions between a statutory and a common law claim for invasion of privacy, the
25 authority on which Twin Star relies does not support a distinction under the circumstances
26 presented here. Rather, as that case explains, a plaintiff cannot establish a common law
27 claim without establishing "an objectively reasonable expectation of seclusion or solitude in
28 the place, conversation or data source" at issue, see Sanders v. American Broadcasting

6

1 Cos., Inc., 20 Cal. 4th 907, 914-15 (1999); see also id. at 920 (distinguishing case finding no expectation of privacy where employer, rather than third party, used video camera to monitor worker's desk).

In sum, the trial court's reasons for its ruling that Jarman could not proceed with a statutory claim for invasion of privacy, as supported by the undisputed evidence establishing the nature of the subject telephone calls and the place at which the calls were made and recorded, "made clear that the case, in fact, did not involve the limited risk set forth in the policy," see California Union Ins. Co., 113 Cal. App. 3d at 247, specifically, a violation of Jarman's "reasonable expectation of seclusion or solitude in the . . . conversation[s]" at issue, see Sanders, 20 Cal. 4th at 914-15.  Consequently, at the time Jarman and Twin Star later settled the Underlying Action, the potential for coverage no longer existed.

Accordingly, Universal Underwriters is entitled to a finding that it does not have a contractual duty to indemnify Twin Star for the settlement.

## CONCLUSION

For the reasons stated above, the deferred portion of Universal Underwriter's motion for partial summary judgment is hereby GRANTED in part and DENIED in part, as follows:

1. To the extent the motion seeks a finding that the duty to defend ceased prior to the conclusion of the Underlying Action, the motion is DENIED.

2. To the extent the motion seeks a finding that Universal Underwriters does not have a contractual duty to indemnify Twin Star for the settlement, the motion is GRANTED.

**IT IS SO ORDERED.**

Dated:  March 18, 2014

MAXINE M. CHESNEY
United States District Judge